IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDRE MAMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-2095-MAB |
| | ) |
| MOHAMMED SIDDIQUI, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for partial summary judgment filed by Defendants Jacqueline Lashbrook and John Baldwin on the issue of exhaustion related to Count 4 (Doc. 93). For the reasons explained in this Order, the motion is granted.

### BACKGROUND

Plaintiff Andre Mamon is an inmate in the Illinois Department of Corrections. He filed this civil rights action pursuant to 42 U.S.C. § 1983 in November 2018 (Doc. 1). He alleged that he slipped and fell on wet stairs at Menard and sustained a serious head injury, which developed into a tumor that went untreated until it ruptured and required emergency surgery (Docs. 1, 8). He amended his complaint in November 2019 to add additional Defendants (Docs. 66, 67). As it stands now, Plaintiff is proceeding on the following claims:

> **Count 1:** Eighth Amendment claim against Wexford for delaying Plaintiff's medical care for a hemangioma tumor, headaches, and blurry vision by instituting a policy of understaffing the prison healthcare unit.

**Count 2:** Eighth Amendment claim against Wexford, enforced by Siddiqui, Shah, Moldenhauer, Ritz, and Smith, for unnecessarily prolonging Plaintiff's pain and suffering associated with his hemangioma tumor, headaches, and blurred vision by instituting a policy of providing inadequate pain medication to inmates.

**Count 4:** Eighth Amendment claim against Wexford, Lashbrook, and Baldwin for turning a blind eye to the inadequate medical treatment provided to inmates at Menard.

**Count 8:** Eighth Amendment claim against Defendants Siddiqui, Shah, Smith, Ritz, Wexford, and Lashbrook for responding with deliberate indifference to Plaintiff's complaints of headaches, blurred vision, and a painful tumor on his head from March 2017 until April 2018.

On March 3, 2020, Defendants Lashbrook and Baldwin moved for partial summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies as to them on Count 4 prior to filing suit (Doc. 94). More specifically, they argue that none of Plaintiff's grievances mention them or describe conduct attributable to them. A week after Defendants filed their motion, the Court granted Plaintiff's motion for counsel (Doc. 96). Plaintiff's new attorney was given a deadline of June 18, 2020 to respond to the motion for partial summary judgment (Doc. 105), which was later extended to August 24, 2020 (Doc. 111). Plaintiff filed a timely response in opposition to the motion for summary judgment (Doc. 114). Defendants did not file a reply. After reviewing the parties' briefs, the Court determined there are no issues of fact and a hearing is not necessary.

## FACTS

Defendant Jacqueline Lashbrook was the Warden at Menard Correctional Center and Defendant John Baldwin was the Director of the IDOC. In the complaint, Plaintiff alleged that both Lashbrook and Baldwin knew through reports from the John Howard

Association, a class action lawsuit *Lippert v. Baldwin*, and countless inmate grievances that the medical care being provide at Menard was inadequate and rife with systemic problems (Doc. 67, pp. 12–14). But Lashbrook and Baldwin did nothing to fix the problems despite knowing it meant that inmates, like Plaintiff, would be denied medical care and forced to suffer in unnecessary pain (*Id.*).

Plaintiff says the first grievance he filed was on March 30, 2017, six days after he fell down the stairs (Doc. 114, p. 1 n.2, pp. 2–3). He does not have a copy of this grievance and there isn't one in the records submitted by the parties. Rather, this grievance was mentioned in Plaintiff's original complaint; specifically, he alleged that he filed a two-page grievance on or about March 30, 2017 but never received a response (Doc. 1, pp. 5, 6). It was also mentioned in a subsequent grievance dated January 14, 2018, where Plaintiff indicated that he previously submitted a two-page grievance approximately nine and a half months prior on March 30, 2017 "on medical treatment and cell house conditions," but never received a response (Doc. 94-4, pp. 25). There are no other details regarding this grievance.

It is undisputed that the January 14, 2018 grievance (#440-1-18) was fully and properly exhausted (Doc. 94-4, pp. 23–28; *see* Doc. 94, Doc. 114). In this grievance, Plaintiff stated that he wrote the March grievance (that was not responded to) after he fell down the stairs, which caused him to black out and have a slight seizure. He was taken to an outside hospital where he had a CT scan and got nine staples in the back of his head. He also had a laceration on the front of his head on the right side, where a "ball like knot" formed after the laceration healed. The knot hurt when it was touched or when Plaintiff

laid on his right side. He also had blurred vision in his right eye and headaches. He claimed that he "constantly complained" about the pain and blurred vision but was told nothing could be done and the knot was only a cyst. In December 2017, he blacked out in his cell and hit his head. The "cyst" split open and started bleeding. He was taken to the health care unit and the wound was cleaned and dressed. The next day, the dressing fell off and it started bleeding again. He was taken back to health care where the doctor said he could remove the cyst. The doctor began cutting into the knot and there was "a lot of blood," according to Plaintiff. The doctor told Plaintiff it wasn't a cyst and he was unable to remove whatever was left. The doctor stitched the wound closed and then left the room. A nurse came in and cleaned up the blood. And Plaintiff was given pain pills and sent back to his cell. Plaintiff complained that the knot was still on his head and he was still having headaches and blurred vision. For relief, he asked to have an outside doctor evaluate the knot and remove it if able.

The grievance was received by the warden on January 25th and determined not to be an emergency (Doc. 94-4, pp. 23–28). It was then sent through the normal grievance process and received by the counselor on February 13th. The counselor responded on March 9th with a memo from the Heath Care Unit, indicating that Plaintiff was seen the previous day by Dr. Siddiqui, who was referring Plaintiff to collegial review with photographs of the lump on his head. Grievance officer Kelly Pierce received the grievance on March 13th and reviewed it on April 10th. Ms. Pierce wrote that the counselor addressed the grievance properly. She further noted that collegial review considered the referral request for a general surgery evaluation on March 22nd but opted

to pursue an alternative treatment plan to have an ultrasound, which had already been scheduled. Ms. Pierce recommended that the grievance was moot because Plaintiff was receiving treatment that was deemed appropriate by medical professionals. The warden concurred on April 13th. Plaintiff appealed to the ARB, where his grievance was received on April 27th. The ARB denied the appeal on May 26th, finding that the grievance had been appropriately addressed at the facility level.

Before Plaintiff received a response from the ARB to the January grievance, he submitted another emergency grievance (#440-4-18) dated April 24, 2018 (Doc. 94-4, pp. 2–22). It is undisputed that this grievance was fully and properly exhausted (*see* Doc. 94; Doc. 114). Plaintiff wrote that this was a "supplementary grievance" to the January one, which was still working its way through the grievance process. He indicated that after being pressured by correctional officers, Dr. Siddiqui requested approval for a referral to a general surgeon. The referral request was denied three times in collegial review. Days after the third denial, the knot "ruptured" and bled profusely. He was taken to the hospital by ambulance, where he found out the knot was actually a tumor and had emergency surgery to remove it and stop the bleeding. Plaintiff complained that he was misdiagnosed by Dr. Siddiqui for over a year, given improper medical treatment at Menard, and denied a general surgery evaluation by Wexford. He claimed it as clear that Menard has an "'inadequate' medical staff and oversite [sic] ("Wexford")."

The warden determined that the April grievance was an emergency and it was processed on an expedited basis. Grievance officer Kelly Pierce reviewed the grievance on April 30th with Dr. Siddiqui and noted that Plaintiff had been seen by medical staff

approximately twenty times since his fall on March 24, 2017. Ms. Pierce recommended that the grievance was moot because Plaintiff was receiving treatment that was deemed appropriate by medical professionals. The warden concurred with the recommendation on May 10th. Plaintiff appealed to the ARB, where his grievance was received on June 8th. The ARB denied the appeal on June 22nd, finding that the grievance had been appropriately addressed at the facility level.[1]

## LEGAL STANDARDS

### *Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed

---

[1] Plaintiff indicates in his brief that he filed another grievance (#382-5-18) dated May 28, 2018 (Doc. 114, p. 2 n.2; Doc. 114-2, pp. 7–8). However, he did not discuss this grievance or make any argument about it (*see* Doc. 114). The Court reviewed the grievance and it does not appear to have any bearing on the issues in this case. Consequently, it will not be discussed in this Order.

courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). No hearing is necessary when there is no disputed issue of fact.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations require, in pertinent part, that a prisoner's grievance "contain factual details regarding each aspect of the offender's

complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* at § 504.810(c). If the offender does not know the names of individual, he "must include as much descriptive information about the individual as possible." *Id.* The grievance forms used by Plaintiff likewise asked for "a description of what happened, when and where it happened, and the name or identifying information for each person involved" (*see* Doc. 94-4, pp. 4, 25). In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (explaining "fatal defect" in grievance was "the absence of anything in it to indicate that [the defendant] was the target."); *see also Ward v. Hoffman*, 670 Fed. Appx. 408, 410 (7th Cir. 2016) (affirming summary judgment based on prisoner's failure to exhaust where he complained only about the procedures used by the adjustment committee and did not mention excessive force or the defendants); *Ambrose v. Godinez,* 510 Fed. Appx. 470, 472 (7th Cir. 2013) (affirming the dismissal of prison officials where the plaintiff's grievance failed to mention the officials by name or otherwise implicate them in the alleged constitutional violation).

## DISCUSSION

Plaintiff's claim in Count 4 against Lashbrook and Baldwin is that they turned a blind eye to the inadequate medical treatment he was receiving for the tumor on his head. None of the grievances at issue put prison officials on notice of a purported problem with Lashbrook and Baldwin.

Beginning with the March 2017 grievance, even if the Court assumes Plaintiff filed

it but never received a response and it is therefore deemed exhausted, *e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002), Plaintiff did not submit any competent evidence demonstrating that the grievance covered Lashbrook and Baldwin. The only thing in the record is the subsequent January 2018 grievance, which indicates the March grievance was about "medical treatment and cell house condition." But that is inadmissible hearsay. Furthermore, that description standing alone does not support the inference that Plaintiff was also complaining about administrators turning a blind eye to the inadequate medical treatment he received. Complaining that medical staff is providing inadequate treatment is a distinct and unique claim from complaining that administrators are ignoring his complaints about the treatment he received or failing to ensure that he received adequate treatment. *See Roberts v. Neal Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014); *Waldrop v. Wexford Health Sources, Inc.*, 646 Fed.Appx. 486, 490 (7th Cir. 2016) (unpublished opinion). Common sense also suggests the March 2017 grievance likely did not includes a complaint about Lashbrook and Baldwin—it was submitted only six days after the accident, which is hardly enough time for Plaintiff's complaints about the medical care he received following the accident to reach the warden and Director of the IDOC, let alone for Plaintiff to conclude the warden and Director had turned a blind eye to his complaints. As such, the March 2017 grievance cannot serve to exhaust Count 4 as to Lashbrook and Baldwin.

The same goes for the January and April 2018 grievances. Neither of these grievances named Lashbrook or Baldwin, contained any complaints about them, or otherwise suggested they were the target of Plaintiff's complaints because they turned a

blind eye to the purportedly deficient medical care he received in the six days after his fall. Instead, Plaintiff only complains in these grievances about the actions of the medical staff and physicians at Wexford's corporate headquarters. These grievances did not contain information sufficient to put prison officials on notice of any issue with Lashbrook or Baldwin and therefore they cannot serve to exhaust to exhaust Count 4 as to Lashbrook and Baldwin.

Consequently, Lashbrook and Baldwin are entitled to summary judgment and shall be dismissed without prejudice as Defendants to Count 4.

## CONCLUSION

The motion for partial summary judgment filed by Defendants Jacqueline Lashbrook and John Baldwin on the issue of exhaustion related to Count 4 (Doc. 93) is **GRANTED.** Count 4 is dismissed without prejudice as to Lashbrook and Baldwin.

This matter will proceed on the following claims:

**Count 1:** Eighth Amendment claim against Wexford for delaying Plaintiff's medical care for a hemangioma tumor, headaches, and blurry vision by instituting a policy of understaffing the prison healthcare unit.

**Count 2:** Eighth Amendment claim against Wexford, enforced by Siddiqui, Shah, Moldenhauer, Ritz, and Smith, for unnecessarily prolonging Plaintiff's pain and suffering associated with his hemangioma tumor, headaches, and blurred vision by instituting a policy of providing inadequate pain medication to inmates.

**Count 4:** Eighth Amendment claim against Wexford for turning a blind eye to the inadequate medical treatment provided to inmates at Menard.

**Count 8:** Eighth Amendment claim against Defendants Siddiqui, Shah, Smith, Ritz, Wexford, and Lashbrook for responding with deliberate indifference to Plaintiff's complaints of headaches, blurred vision, and a painful tumor on his head from March 2017 until April 2018.

The stay on discovery is lifted and discovery may proceed on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: January 14, 2021**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**
